PIPKIN et al. v. WARE et al. (No. 755.)†

(Court of Civil Appeals of Texas. Amarillo. March 27, 1915. On Motion for Rehearing, April 17, 1915.)

1. DEEDS ⊂⊃207, 208—ACTIONS—EVIDENCE.
The execution and delivery of a deed may be established by circumstantial evidence.
[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 614–632; Dec. Dig. ⊂⊃207, 208.]

2. LOST INSTRUMENTS ⊂⊃23—DEEDS—DELIVERY—ESTABLISHMENT.
The execution and delivery of a lost deed may be established by the entry of acknowledg-

ment, coupled with the grantor's nonclaim for many years and failure to deny execution.
[Ed. Note.—For other cases, see Lost Instruments, Cent. Dig. §§ 51–57; Dec. Dig. ⊂⊃ 23.]

3. VENDOR AND PURCHASER ⊂⊃244—BONA FIDE PURCHASERS—WHO ARE.
Evidence held insufficient to show that plaintiffs were bona fide purchasers without notice of defendants' claims.
[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 609–611; Dec. Dig. ⊂⊃244.]

4. VENDOR AND PURCHASER ⊂⊃229—BONA FIDE PURCHASERS—WHO ARE.
Attorneys, employed by a grantor to recover land by setting aside an earlier conveyance, who as compensation received a conveyance of part of the land in controversy, are not bona fide purchasers.
[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig. ⊂⊃229.]

On Motion for Rehearing.

5. VENDOR AND PURCHASER ⊂⊃229—BONA FIDE PURCHASERS—NOTICE.
If a purchaser pursues a proper inquiry and ascertains facts which would satisfy a prudent man that there was no defect in title, or if inquiry would not have shown any defect, he may be a bona fide purchaser.
[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig. ⊂⊃229.]

6. VENDOR AND PURCHASER ⊂⊃229—BONA FIDE PURCHASERS—INQUIRY.
Where a prospective purchaser has notice of facts putting him on inquiry, he is bound to make inquiries of his vendor.
[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig. ⊂⊃229.]

7. ADVERSE POSSESSION ⊂⊃104—ACTIONS—EVIDENCE.
While mere nonclaim and nonpayment of taxes will not result in a loss of title save by limitations, such facts are evidence of a grant.
[Ed. Note.—For other cases, see Adverse Possession; Cent. Dig. §§ 595–602; Dec. Dig. ⊂⊃ 104.]

Appeal from District Court, Hale County; L. S. Kinder, Judge.

Action by H. J. Pipkin and others against R. C. Ware and another. From a judgment for defendants, plaintiffs appeal. Affirmed.

C. D. Russell and Graham & Graham, all of Plainview, for appellants. Mathes & Williams, of Plainview, for appellees.

HENDRICKS, J. This is a controversy in trespass to try title over lot No. 29, in block No. 31, in the town of Plainview, Hale county, Tex., between appellants, M. T. Dalton, as the survivor of L. W. Dalton, deceased, H. J. Pipkin, E. Graham, and E. J. Howard, against the appellees, R. C. Ware and the Donohoo-Ware Hardware Company, a corporation, and defendants in the lower court. The plaintiffs, Howard, Graham, and Dalton, claim an undivided half interest in said lot by virtue of a conveyance from H. J. Pipkin of date August 12, 1910, and recorded the next day, and upon the consideration in the face of the deed "of $10.00 and other

valuable considerations in hand paid," said deed containing a clause of general warranty. The defendant R. C. Ware (appellee in this court) deraigns title through a deed from H. J. Pipkin (one of the plaintiffs), to one L. S. Moseley, claimed to have been executed and delivered November 5, 1891, from Moseley to Hall by deed executed and recorded March 12, 1892, and through a deed from W. S. Hall to himself dated May 12, 1902, and recorded October 4, 1907. The alleged deed from H. J. Pipkin to Moseley, through which R. C. Ware deraigns, is claimed to be a lost instrument; and it was agreed, upon the trial of the cause, that the defendants "had made proper search for [said deed] conveying the lot in controversy, to entitle them to offer secondary evidence of the execution and delivery of such deed, and preliminary proof of search for such deed" was waived. We quote the following from the statement of facts:

Defendants introduced in evidence an entry in the record of acknowledgments taken by S. P. Strong, clerk of the county court of Hale county, Tex., and an archive in the office of the county clerk of Hale county, Tex., being found on page 44, and being numbered No. 369, and was as follows:

| Number. | Kind of Instrument. | Date of Instrument. |
| --- | --- | --- |
| 369 | W. Deed. | Nov. 5, 1892. |

| If Land is Conveyed, Give Location, etc. | Name of Grantor and His Residence. | Grantor Personally Known, etc. |
| --- | --- | --- |
| Lots 29, 30, 31, Blk. 31, in town of Plainview, Hale county, Texas. | H. J. Pipkin, Plainview, Texas. | Personally known. |

| Name and Residence of Grantee. | Amt. of Fees. | Date of Acknowledgment. |
| --- | --- | --- |
| L. S. Moseley, Plainview, Texas. | .50 | Nov. 5, 1891. |

Name of Officer and His Style Who Took Acknowledgment.

S. P. Strong, Co. Clerk, Hale county, Texas.

The jury in response to special issues answered that H. J. Pipkin made, executed, and delivered to L. S. Moseley the deed to said lot, and the appellants assign that the testimony is insufficient to support said answer, for that the only testimony relating to the question of the execution of same—

"was the record of an acknowledgment purporting to be an acknowledgment of such a deed, and this alone is insufficient to prove the execution (or delivery) of the deed, in view of the fact that L. S. Moseley himself stated that he had no recollection of such a transaction."

They also assign, based upon objections to the deed when offered in evidence, and likewise upon a motion to strike same from the record, that it was never shown by the defendants that there was such a deed from Pipkin to Moseley, nor that the same had been lost or destroyed, and that the entry of the record of acknowledgment was irrelevant and immaterial, and that such record was not notice to the plaintiffs that a deed from Pipkin to Moseley was in existence. A letter from L. S. Moseley to the attorneys representing appellees, of date November 25, 1910, in effect stated that, upon examination of his papers, he was unable to find such an instrument, and had no recollection about such a transaction, but that if he made a deed to W. S. Hall, he must have had title to said lot from some one.

R. C. Ware testified that the Ware-Donohoo Hardware Company, of which he was manager, while a partnership, had placed a building upon the lot, and was using the same without any knowledge of the ownership of the property, and while the same was being used, W. S. Hall claimed said lot, and as the result of negotiations between him and Hall he obtained, in consideration of the sum of $50, the deed from Hall of date May 12, 1902, and that thereafter the Ware-Donohoo Hardware Company, first as a partnership, and then as a corporation, continued to use the property for warehouse purposes to some time in 1907. The record shows that during 1907 the said Ware-Donohoo Hardware Company changed to a different management and control, by a transfer of a majority of the stock, which was owned by Ware and Donohoo, and with a further continued use thereafter of said property by said corporation, with a suggestion in this record of a different claim of ownership by said corporation through a different title than that of R. C. Ware.

There is a suggestion in the record that H. J. Pipkin, the grantor in the alleged lost deed, had been living near Clovis, N. M., for a period of 12 or 15 years prior to the trial of this cause.

This suit was filed in the district court of Hale county, and Mr. Graham, one of the plaintiffs, testified that possibly about 60 days prior to the institution of the suit the firm of Dalton & Graham accepted an offer of employment through E. J. Howard, one of the other plaintiffs, for the purpose of proving H. J. Pipkin's title to the property, and which employment was the sole consideration for the conveyance by said Pipkin to E. J. Howard and Dalton & Graham of the undivided half interest in the lot by deed of date August 12, 1910, above mentioned. There is no testimony in the record from Pipkin, nor from any other source, of any claim by Pipkin of the title to, or ownership of, said lot during the interim of time be-

tween the alleged execution of the Pipkin-Moseley deed, nearly 19 years, and the time of the negotiations between Howard and Graham & Dalton, resulting in the institution of this suit. There is no proof of the payment of taxes by Pipkin upon the property subsequent to the time of the alleged execution and delivery of the deed by him to Moseley of date November 5, 1891.

[1, 2] It having been agreed that defendants had made a proper search for a deed from Pipkin to Moseley, to entitle them to offer secondary evidence of the execution and delivery of same, we are of the opinion that the acknowledgment record, with the absence of claim and the lack of proof of the payment of taxes on the part of H. J. Pipkin, the length of time that has elapsed, with the proof of execution and delivery of a conveyance from Moseley (Pipkin's alleged grantee) to Hall, and the claim by Hall of ownership to said property, in connection with the occupancy of said property, either by Ware or the Ware-Donohoo Hardware Company, coupled with the evidence of the entry of acknowledgment by Pipkin of a deed to Ware, constitute sufficient testimony to present to the jury the execution and delivery of a deed to Moseley by Pipkin, and that said record of acknowledgment, in connection with the other circumstances detailed, was competent and material evidence of that fact.

A deed may be established by circumstantial evidence. Bounds v. Little, 75 Tex. page 316, 12 S. W. 1109. Appellants quote from the case of Overand v. Menczer, 83 Tex. 130, 18 S. W. 304, that it is necessary, to introduce evidence of the proper execution of an instrument claimed to be lost, that the same once existed as a valid instrument of conveyance. We think an analysis of that cause, as to the insufficiency of the facts commented upon by the court to sustain the lost deed, exhibits the inapplicability of that case to this record, and a more extended quotation from the opinion rather negatives, instead of sustains, the position assumed by the appellants. The court said:

"It is contended that the deed in question was lost. It was nevertheless necessary to introduce evidence of its proper execution, and that it once existed as a valid instrument of conveyance. * * * This evidence may be of *direct or circumstantial character*, but it must be offered."

The court further said, that there was no hint in the record that such a deed was in existence, except in a statement condemned as hearsay, found in an answer in another cause, and—

"the isolated fact, relied upon by appellees, that the land for a series of years was not rendered for taxes by Mrs. Overand is wanting in probative force, in the absence of other evidence tending to show the execution or the existence of the deed."

The case of Mayfield v. Robinson, 22 Tex. Civ. App. 390, 55 S. W. 401 (writ of error refused) says:

"This certified copy [a notarial record of acknowledgment], to which appellants also ob-jected, was correctly admitted, not as sufficient alone to establish the delivery of the deed, but in corroboration of the statement of A. C. Herndon, and to show that such a deed was signed and acknowledged on the date, before the officer, and in the county in question. The authority of the clerk to make and certify to the copy and the admissibility of the copy are clear."

Also see Hutcheson v. Massie, 159 S. W. 317, decided by this court, in which it is held that a notarial record of acknowledgment, in connection with other testimony, is admissible testimony to prove a lost deed. While a writ of error was granted by the Supreme Court in that cause, it was not upon this point.

The case of Trice's Heirs v. McCaleb, 138 S. W. 792, was one where the notarial record of an acknowledgment, for the purpose of proving a lost instrument, was rejected, because a sufficient predicate had not been laid. The court said:

"Had the loss of the deed been shown, or had it been proved that it could not be produced on the trial, the evidence complained of would have been admissible as a circumstance to show its execution and delivery."

Of course the court did not mean that you would have to prove that a deed was executed before the acknowledgment was admissible, for if you proved its execution, the record of acknowledgment would not be necessary except as cumulative evidence. The authorities do not condemn a record of an acknowledgment as competent and material testimony, where a sufficient predicate is made as to inability to produce the alleged lost instrument. This litigation does not present a bare record of acknowledgment as the only proof of a lost instrument, which we do not decide; but it presents a record of acknowledgment in connection with other probative circumstances. Pipkin was an antagonistic litigant, claiming adversely to Ware, and we do not think Ware would be required to explore the consciousness of Pipkin and risk a denial as to his execution of such an instrument; but, however, there is some significance in the failure of the denial of execution of such an instrument by Pipkin, especially when the record suggests that several years before the trial the attorneys for Pipkin, not only knew of Ware's claim, but the claim of the source of same.

[3] The jury also answered that E. J. Howard and Graham & Dalton were not purchasers for value in good faith of the undivided half interest in the lot, and further answered that they had notice that H. J. Pipkin had made a deed to Moseley at the time the Pipkin deed to the undivided interest was made to them. The record is quite suggestive, at least, that prior to the Pipkin deed to them, Graham had actual notice that R. C. Ware had a claim upon the lot. If we should concede that at the time they received the deed and accepted the employment Graham had no actual knowledge of the Pipkin-Moseley deed, at

best their knowledge could only be considered a misconception of the source and derivation of Ware's claim, and upon the doctrine of inquiry, as a jury question, we think the finding upon this issue is sufficiently supported by the testimony.

[4] Again, if Pipkin, actually made 'the deed to Moseley, through whom Ware claims, in accordance with the jury's finding, and he then employed attorneys upon a consideration of a conveyance by him of an interest in the same property, which he had previously deeded, how could Howard, Dalton, and Graham become innocent purchasers? Though we may assume (however the record is silent) that after having made the deed to Moseley, at the time he employed the attorneys, he had forgotten the execution of such an instrument, he in effect, however, is employing them to recover against a deed which had been previously executed by him. If so, why would not Howard, Dalton & Graham in this character of case stand in the shoes of the grantor? The case of Tobin v. Benson et al., 152 S. W. 642, is one where Benson had been employed to procure a lost deed and place the same upon record, in consideration of which he was granted a portion of the property, and was not one, so far as Benson was concerned, involving an employment to clear the title to property tending to a repudiation of the grantor's own deed. Benson procured the substitute deed in that case, which he was employed to do, and placed the same of record, thereby performing the service, which constituted a valuable consideration, and without notice of an unrecorded outstanding title. Here the very employment, when pursued to a final result, makes the performance of the service, in destroying the deed, the consideration of that employment. We do not think innocent purchaser applies to such a case.

In this conception, this court does not impute whatever any element of wrong to anybody; the record, so far as counsel are concerned, does not present any unfair dealing whatever, but a mere insistence of what is conceived to be certain legal rights.

All assignments are overruled, and the judgment is affirmed.

### On Motion for Rehearing.

Appellants assert, in their motion for rehearing, that this court was in error in saying that the attorneys for Pipkin, several years before the trial of this cause, not only knew of Ware's claim, but the claim of the source of same. It is true that there is a statement that the fact of a lost deed was not known until about six months previous to the trial of the cause; however, there is this testimony, which at least is indicative of knowledge of Ware's claim through Hall and Moseley:

"I can't be positive when I examined the records and found that Ware was claiming under this other chain of title [the chain from Moseley]. My best recollection is that I made no examination until we got ready to file the suit, and that was the first time I knew of the other chain of title under which Ware claims."

This suit was instituted by appellants September 8, 1910. There is in this record the following testimony, which we will admit is rather hard to construe as to its meaning and effect as to the question of notice, and likewise as bearing upon the question of due inquiry:

"My impression is that I looked at the record to see if Pipkin had title, and found that deed from Mr. Pipkin regularly recorded from him on down; but I am not sure when I ascertained that—whether before or afterward."

[5] As to the question of notice, based upon the doctrine of inquiry, the appellants further say, in effect, that as to any discovery of a conveyance from Pipkin to Moseley, though they may have known, at the time they accepted the deed from Pipkin, that Ware claimed the land, any investigation they would have made would have been fruitless. We, of course, admit the rule that if a purchaser has information and pursues a proper inquiry, and ascertains facts which will satisfy a prudent man that there is no defect of title, he can still be an innocent purchaser (Bacon v. O'Connor, 25 Tex. 213); and it is likewise the rule, of course, that though inquiry has not been made, but if it had been and notice of defect would not have been discovered, the result is the same (Bowles v. Belt, 159 S. W. 887).

[6] Viewing it as the jury could have viewed it, it is at least inferable that the appellants knew that Moseley deeded to Hall and Hall to R. C. Ware, when they accepted the deed from Pipkin; they knew that Ware claimed the land. There is a condition in this record which we did not analyze in detail in the original opinion, which, it seems to us, is overlooked by appellants. Viewing the testimony, and specially that recited herein, the jury could have found actual knowledge to appellants of the Moseley and Hall deeds; and certainly, as stated, they are presumptively charged with the knowledge of these conveyances on account of their notice of Ware's claim. It may be they could not have discovered, by inquiry of Moseley, from whom he procured any title, but, having knowledge of such salient facts sufficient to excite inquiry, could they have discovered such information from Pipkin, their own grantor? "If a person has sufficient notice to place him upon inquiry, and does not take advantage of the means at his command to learn the facts, he must be considered as knowing the facts." Devlin on Deeds (3d Ed.) vol. 2, § 743A, p. 1374. Appellants may say, of course, that we could not be expected to inquire of our own grantor and of our own client committing his claim to us for suit whether he had previously conveyed the land; neither would we be expected to go any further than the record. It is the law that one—

"is not required to institute inquiries as to the existence of rights of which there is no evidence upon the records, *unless there be some fact which he knows, or should know, sufficient to excite inquiry in the minds of prudent persons.*" Paris Grocery Co. v. Burks, 101 Tex. 111, 105 S. W. 175. (The emphasis is ours.)

The record of acknowledgment by Pipkin to Moseley of a deed purporting to convey this land is undisputed. Appellants concede in their motion that "article 3697, R. S. provides that the record of acknowledgments is admissible as evidence of the contents thereof" (though denying as to the condition here that the acknowledgment is any proof of delivery). The fact of the execution of a deed to Moseley by H. J. Pipkin, irrespective of delivery, is practically undisputed, though, of course, appellants may not concede the inference.

This suit has been pending since September, 1910, without any denial by Pipkin of the execution, or delivery, of such a deed, no statement whatever by him, at the time he committed the business to his attorneys to recover this land, that at said time he did not remember any such instrument. What would he have answered appellants if they had inquired? which we think clearly it was their duty, having the knowledge of the other claim, the same as it would have been the duty of any other vendee attempting to obtain title to the property.

[7] Appellants further say, with reference to the fact of nonclaim by Pipkin:

"We have never understood that a person could lose title to property on account of nonclaim and nonpayment of taxes, except by limitation."

Nonclaim is, however, significant testimony of a grant, when connected with other circumstances, and has always been so considered. Davidson v. Wallingford, 88 Tex. 625, 32 S. W. 1030; Huff v. Crawford, 89 Tex. 220-221; Stafford v. Kreinhop, 63 S. W. 166.

The motion for rehearing is overruled.